**IN THE COUNTY COURT OF JACKSON COUNTY, MISSISSIPPI**

**BENJAMIN WARREN HUDSON, JR., a minor,** **PLAINTIFFS**
**By and through his parent and next friend,**
**DR. BENJAMIN HUDSON**

**ELI JAX PITALO, a minor,**
**By and through his parent and next friend,**
**GEORGE "TRAE" PITALO, III**

**AND** **CAUSE NO: 30CO1:26-CV-22151-MW**

**MORGAN SEYMOUR, a minor,**
**By and through his parent and next friend,**
**MICHAEL SEYMOUR**

**V.**

**DAMARCUS HUGHES a/k/a "BOOGIE LOWDOWN"** **DEFENDANTS**

**DEFENDANT DAMARCUS HUGHES' MEMORANDUM IN SUPPORT OF HIS MOTIION TO DISOLVE THE EX PARTE TEMPORARY RESTRAINING ORDER AND RESPONSE IN OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION REQUEST**

**PRELIMINARY STATEMENT**

A court cannot prohibit speech merely because someone finds it objectionable. Nor can it invoke a domestic-abuse statute against a defendant who has no domestic relationship with the plaintiffs. Yet the October 12 order does both.

The order forbids Defendant Damarcus Hughes from publishing, commenting on, or even referencing three minors, their families, or their lawyers online. It also restricts his movement. The Court entered that order without notice, without an adversary hearing, and without the statutory predicate required by the very law on which the order rests.

Three independent defects require its dissolution.

*First*, the statute does not apply. The order expressly invokes Mississippi's Protection from Domestic Abuse Law, Miss. Code Ann. § 93-21-1 *et seq.* That statute authorizes relief only for

specified misconduct between people in defined domestic or intimate relationships. Mr. Hughes has no such relationship with any Plaintiff. Whatever Plaintiffs may allege about his online commentary, they cannot supply a relationship that does not exist. The statute provides no authority for this order.

*Second*, Rule 65 cannot save it. If the order is instead treated as an ordinary temporary restraining order, it fails the requirements governing ex parte relief. It contains no certification of efforts to provide notice, fixes no ten-day expiration, and was entered without the security Mississippi law requires. The Mississippi Supreme Court has held that an injunction issued without the required bond is a nullity.

*Third*, the First Amendment independently forbids the speech restriction. The order does not merely prohibit threats or harassment. It prohibits speech about the Plaintiffs, their families, and their lawyers — whether truthful or false, threatening or harmless, harassing or not. And it does so before that speech occurs. The Supreme Court has repeatedly condemned such prior restraints, particularly when imposed without notice or an opportunity to be heard.

The Court need not decide whether Mr. Hughes's commentary was fair, tasteful, or justified. The question is whether the law permits this order.

It does not. The order should be dissolved, and the motion for a preliminary injunction denied.

## STATEMENT OF FACTS

On October 12, 2026, this Court entered an "Order Granting Ex Parte Relief" (the "Order") against Defendant Damarcus Hughes, also known as "Boogie Lowdown." *See Doc. No. 5,* Order at p. 1. The Plaintiffs are three minors — Benjamin Warren Hudson, Jr., Eli Jax Pitalo, and Morgan Seymour — each appearing through a parent and next friend. *Id.*

The Order invokes "Section 93-21-1 et. seq., of the Mississippi Code of 1972," and recites that the Court has continuing personal and subject-matter jurisdiction and that "good cause" supports relief. *Id.* It also finds "a substantial likelihood that the Plaintiffs will sustain irreparable injury." *Id.* at 3.

The relief is sweeping.

The Order prohibits Mr. Hughes from "posting, publishing, commenting, referencing, or participating in any online forums or LIVE broadcasts concerning the Plaintiffs, their counsel, or families." *See Id.* at 2. It also bars him from telephoning or personally contacting the Plaintiffs or their families, and from harassing or interrupting their daily activities. *Id.* It requires him to remain 1,000 yards away from the Plaintiffs, their families, residences, and schools. *Id.*

The Order further directs local law enforcement to respond to the Plaintiffs' requests for assistance and declares that it "shall serve as a Writ of Assistance." *Id.* at 2–3.

The Court entered the Order at 11:10 a.m. on October 12, 2026, effective immediately. *Id.* at 3. Rather than provide a fixed expiration date, the Order states that it will remain in effect "until the hearing on the Plaintiffs' request for a preliminary injunction, unless extended by the Court for good cause shown or by consent of the Defendant." *Id.* at 2.

The Order contains no finding that Mr. Hughes has any spousal, familial, cohabiting, or dating relationship with any Plaintiff. It recites no certification of efforts to notify him before issuance, or any reason notice should be excused. It sets no ten-day expiration. And it requires no bond or other security. *Id.* at 1–2.

Those omissions are dispositive.

## ARGUMENT

A court's decision to grant or dissolve injunctive relief is reviewed for abuse of discretion. Questions of law are reviewed de novo. *Yarbrough v. Sacred Heart Cath. Sch. of Hattiesburg*, 399 So. 3d 976 (Miss. Ct. App. 2025).

Each ground for dissolution here presents a controlling question of law. And each independently requires relief.

### I. THE PROTECTION FROM DOMESTIC ABUSE LAW DOES NOT APPLY BECAUSE MR. HUGHES HAS NO QUALIFYING RELATIONSHIP WITH THE PLAINTIFFS.

The Court invoked Mississippi's Protection from Domestic Abuse Law. But that law does not authorize protective orders against anyone accused of objectionable conduct. It applies only when the parties have a relationship specified by the Legislature.

Mr. Hughes has no such relationship with any Plaintiff. That is the end of the statutory inquiry.

The statute establishes a complete framework for domestic-abuse protection orders. As the Mississippi Court of Appeals explained in *Waite v. Adkisson*, 282 So. 3d 744, 750 (Miss. Ct. App. 2019), it "not only provides a right and cause of action but also a complete scheme for the issuance of injunctive relief in the form of emergency, temporary, and final domestic abuse protection orders." A petitioner "is either entitled to relief under the [statute] or not." *Id.*

The Court cannot dispense with the statute's requirements merely because it believes some other form of relief may be appropriate.

The threshold requirement is statutory "abuse." And the Legislature defined that term by reference not only to the alleged conduct, but also to the relationship between the parties.

Under Miss. Code Ann. § 93-21-3, "abuse" means specified acts occurring:

> between spouses, former spouses, persons living as spouses or who formerly lived as spouses, persons having a child or children in common, other individuals related by consanguinity or affinity who reside together or who formerly resided together or between individuals who have a current or former dating relationship.

Miss. Code Ann. § 93-21-3.

That language is not incidental. It defines the statute's reach. *Waite* confirms that the statutory definition governs entitlement to a protection order. *See Waite*, 282 So. 3d 744.

To be sure, the enumerated acts include stalking and cyberstalking. Miss. Code Ann. § 93-21-3. But the Legislature did not authorize a domestic-abuse protection order against every person accused of stalking or cyberstalking. It limited relief to misconduct occurring within the relationships it identified.

Even the statute's potentially broadest category — a "dating relationship" — has a precise definition. It requires "a social relationship of a romantic or intimate nature between two (2) individuals" and expressly excludes "a casual relationship or ordinary fraternization between two (2) individuals in a business or social context." *Id.*

Nothing in the record suggests that Mr. Hughes, an online commentator, has ever been married to, lived with, shared a child with, been related to, or dated any of the three minor Plaintiffs or their parent representatives here. The Order makes no such finding.

Without that relationship, the statute does not apply.

Plaintiffs may point to § 93-21-7(1), which provides that "[a]ny person may seek a domestic abuse protection order" and permits a parent or next friend to petition on behalf of a minor. Miss. Code Ann. § 93-21-7(1). But that provision addresses who may file a petition. It does not redefine "abuse" or eliminate the relationship requirement.

The distinction is elementary: the right to seek relief is not the right to obtain it.

The statute imposes additional requirements that the Order also fails to satisfy.

An emergency order may issue ex parte only upon a showing of "[i]mmediate and present danger of abuse." Miss. Code Ann. § 93-21-13. And every order issued under the statute "shall set forth the reasons for its issuance, shall contain specific findings of fact regarding the existence of abuse, shall be specific in its terms and shall describe in reasonable detail the act or acts to be prohibited." Miss. Code Ann. § 93-21-15.

The October 12 Order makes no finding of statutory abuse. It identifies no qualifying relationship. Instead, it recites "good cause" and a "substantial likelihood" of "irreparable injury." (Order at 1, 3.)

Those conclusions cannot substitute for the findings the Legislature required.

The Court invoked a statute that does not reach this Defendant and failed to make the findings that statute demands. The Order cannot stand and must be dissolved.

## II. RULE 65 CANNOT SAVE THE ORDER BECAUSE IT FAILS THE REQUIREMENTS FOR EX PARTE INJUNCTIVE RELIEF.

The Order fares no better if treated as an ordinary temporary restraining order under Mississippi Rule of Civil Procedure 65.

Rule 65 permits extraordinary relief without notice, but only subject to specific safeguards. The October 12 Order fails them.

### A. The Order lacks the required notice certification and expiration date.

Rule 65(b) permits a temporary restraining order without notice only when two conditions are satisfied.

*First*, specific facts in an affidavit or verified complaint must clearly establish that immediate and irreparable injury, loss, or damage will occur before the opposing party can be heard.

*Second*, the applicant's attorney must certify in writing the efforts made to provide notice, if any, and explain why notice should not be required. Miss. R. Civ. P. 65(b).

The rule also requires an ex parte order to state the date and hour of issuance, define the injury, explain why it is irreparable, and state why relief was granted without notice. The order must expire by its terms within ten days unless properly extended. *Id.*

These requirements are mandatory. They protect against the obvious danger of imposing extraordinary relief after hearing only one side.

The Attorney Affidavit does not clearly establish that immediate and irreparable injury, loss, or damage will occur before the opposing party can be heard. The Affidavit provides one claim of evidence of irreparable injury, loss, or damage:

1. The Defendant is exposing the location of the Plaintiff's homes and schools to an audience on social media, depicting the Plaintiffs as killers in the July 4, 2026, death investigation of Nolan Xavier Well [sic].

*See* Doc. No. 4, at p. 5. This statement by counsel does not constitute specific facts of irreparable injury, loss or damage. It includes no specificity as to when Defendant allegedly "exposed" the location of Plaintiff's home and schools to an audience on Social Media. Further, the grammer of the statement indicates that the location of a singular plaintiff's homes and schools is being exposed by the Defendant, but the affidavit fails to specify which plaintiff it refers.

The Complaint does little to revive this statement. There is one reference to this claim in the Complaint in Paragraph 90. Similarly, the Complaint does not specify when, where, how, or any other specific details. It merely asserts a blanket allegation of irreparable injury, damage, or loss. That is not sufficient.

There are also multiple exhibits attached to the Complaint which Defendant assumes were attached to support the Plaintiffs' allegations. But, none of those social media posts support the bare statement that Defendant exposed the location of the Plaintiff's homes and schools.

Additionally, Attorney Affidavit fails to provide a sufficient notice certification as required by Rule 65. The Affidavit states, "the undersigned has made no effort to provide notice of this proceeding to the *Plaintiff*." *See* Doc. No. 4, at p. 4 (emphasis added). This statement is insufficient as Rule 65 contemplates notice be provided to the Defendant of the proceedings, not the Plaintiff. Further, the Attorney Affidavit fails to provide the "reasons supporting his claim that notice should not be required." *See* M.R.C.P. 65(b).

To this end, the Temporary Restraining Order lacks these findings as well. The October 12 Order contains no attorney certification of efforts to provide notice to the Defendant. It does not explain why notice was excused. And it contains no ten-day expiration. Instead, it remains in effect indefinitely "until the hearing" on Plaintiffs' preliminary-injunction motion.

**B. The failure to require security renders the Order a legal nullity and void.**

The bond defect is equally decisive.

Rule 65(c) provides that, "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully enjoyed or restrained . . . ." *See* Miss. R. Civ. P. 65(c). The October 12 Order requires no bond or security. *See* Doc. No. 5, Order at p. 2.

Mississippi law supplies the consequence. In *Invesat Corp. v. Harrison Enterprises, Inc.*, 386 So. 2d 721, 722 (Miss. 1980), the Mississippi Supreme Court held that an injunction issued without the required bond "is void and should be dissolved."

The Court explained:

> [B]efore any preliminary writ or order can have the effect of an injunction, by whatever name the writ may be called, it is essential that bond be required and be given, and if it is not so done the injunction is a nullity.

*Id.* (internal citations omitted). " 'Nullity' is defined as a 'legal invalidity[,]', 'nothingness[,];, and 'an act void of legal effect.'" *See Reeves v. Gunn*, 307 So.3d 436, at n. 15 (Miss. 2020). The Supreme Court in *Reeves* further emphasize that "void" is defined as "of no legal force or effect" and "containing nothing[.]" *See id.*

That holding leaves no room for treating the bond requirement as a formality.

Although Rule 65 provides exceptions to the requirement for a bond, none of those exceptions apply here. Rule 65(c) excuses the State of Mississippi, or of any officer or agency thereof. Further, Rule 65 permits a court, in its discretion, to dispense with security in domestic-relations actions, actions against the State of Mississippi or of an officer or agency thereof. Miss. R. Civ. P. 65(c). Regardless of the Plaintiffs and this Court's order reliance on Miss. Code Ann. § 93-21-1, this is not a domestic-relations action. As explained above, Mr. Hughes has no qualifying domestic relationship with any Plaintiff.

Because the Temporary Restraining Order does not require bond or security be paid by the applicant for the payment of such costs, damages, and attorney's fees as may be incurred or suffered by the Defendant, the October 12, 2026, order is a legal nullity and void as a matter of law. It must be dissolved.

**C. The Order also fails Rule 65's specificity requirement.**

Rule 65(d) requires every injunction to "set forth the reasons for its issuance" and "be specific in terms." *See* Miss. R. Civ. P. 65(d).

The October 12 Order offers only conclusory recitals of "good cause" and "irreparable injury." *See Doc. Nos. 5 & 6*. Those recitals do not supply the reasons Rule 65 requires.

The rule also provides a direct remedy. On two days' notice — or shorter notice prescribed by the Court — a party subject to an ex parte restraining order may move to dissolve or modify it. The Court must hear and determine that motion "as expeditiously as the ends of justice require." Miss. R. Civ. P. 65(b).

And if the applicant fails to proceed with the preliminary-injunction application, the rule directs that "the court shall dissolve the temporary restraining order." *Id.*

Mr. Hughes files the instant motion through counsel seeking immediately relief from the procedurally and substantively flawed Temporary Restraining Order. Whether the October 12 Order is evaluated under the domestic-abuse statute or Rule 65, the result is the same: it cannot stand.

## III. THE ORDER'S SPEECH RESTRICTIONS VIOLATE THE FIRST AMENDMENT.

Even if the Order satisfied Mississippi's statutory and procedural requirements, and it does not, its speech restrictions would remain unconstitutional.

The Order forbids Mr. Hughes from "posting, publishing, commenting, referencing, or participating in any online forums or LIVE broadcasts concerning the Plaintiffs, their counsel, or families." *See* Doc. No. 5.

That is not a prohibition limited to threats, harassment, or unlawful conduct. It is a prohibition on speech about identified people, imposed before the speech occurs.

The First Amendment does not permit such a sweeping restraint.

### A. The Order is a prior restraint, and prior restraints are presumptively unconstitutional.

A judicial order "forbidding certain communications when issued in advance of the time that such communications are to occur" is a prior restraint. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 579 (5th Cir. 2005); *citing Alexander v. United States*, 509 U.S. 544, 550 (1993).

The constitutional rule is demanding. "Any system of prior restraints on communication bears a heavy presumption against its constitutional validity." *Id.* at 579*; citing Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). Such restraints are unconstitutional "except in exceptional circumstances." *Id.*

The burden rests with the party seeking to suppress speech. As the Supreme Court held in *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971), that party "carries a heavy burden of showing justification for the imposition of such a restraint."

That burden reflects a fundamental distinction between imposing liability for unlawful speech after publication and forbidding speech before it occurs.

In *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 718–20 (1931), the Supreme Court explained that the constitutional guarantee of free expression provides "immunity from previous restraints." The remedy for false or injurious statements lies in "actions under libel laws providing for redress and punishment, and not in proceedings to restrain the publication." *Id.*

The October 12 Order crosses that line. It does not impose consequences for particular statements adjudicated unlawful. It prohibits Mr. Hughes from speaking about entire categories of people in the future.

That is a prior restraint in its most direct form which is presumed unconstitutional.

**B. The Order's ex parte issuance is independently unconstitutional.**

The absence of notice presents a separate constitutional defect.

In *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175, 180 (1968), the Supreme Court set aside a short ex parte order restraining expression because of "a basic infirmity in the procedure by which it was obtained."

The order "was issued ex parte, without notice to petitioners and without any effort, however informal, to invite or permit their participation in the proceedings." *Id.*

The Supreme Court held:

> There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; There is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.

*Id.* at 180.

The Court also rejected the suggestion that a later hearing could cure the problem. The availability of a subsequent opportunity to be heard "does not overcome the infirmity in the absence of a showing of justification for the ex parte nature of the proceedings." *Id.* at 183–85.

The reason is straightforward. "The value of judicial decision-making . . . is substantially diluted where the process is ex parte, because the Court does not have available the fundamental instrument for judicial judgment: "an adversary proceeding in which both parties may participate." *Id.*

And where First Amendment freedoms are at stake, any order must be "couched in the narrowest terms that will accomplish the pin-pointed objective." *Id.*

The October 12 Order fails both principles.

It was entered without notice or an adversary hearing. It contains no finding that notifying Mr. Hughes was impossible. *See* Doc. Nos. 5 - 6. And far from identifying a narrow category of unlawful speech, it prohibits virtually any online commentary concerning the Plaintiffs, their families, or their counsel. *Id.* at 2.

*Carroll* is directly controlling on the constitutional defect. An ex parte order restraining expression cannot stand without a showing that notice and participation were impossible. *See Carroll*, 393 U.S. at 180–81.

No such showing appears here.

**C. The speech restriction is far broader than the First Amendment permits.**

The Order would be unconstitutional even if entered after a full adversary hearing.

Courts may prohibit genuine harassment, threats, and repeated invasions of privacy. But they cannot use those legitimate objectives to suppress lawful speech wholesale.

*Test Masters* illustrates the distinction. There, the Fifth Circuit recognized that a court may enjoin "harassing communication" and "repeated invasions of privacy." 428 F.3d at 579–80. But an injunction prohibiting all communication, rather than limiting itself to "threatening or harassing conduct," "swept too broadly" and constituted an unconstitutional restraint. *Id.*

The Supreme Court has likewise recognized that injunctions "carry greater risks of censorship and discriminatory application" than generally applicable laws. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764 (1994). For that reason, an injunction must "burden no more speech than necessary." *Id.* at 765.

The October 12 Order does precisely what those decisions forbid.

It prohibits Mr. Hughes from publishing, commenting, or even referencing the Plaintiffs, their families, or their counsel online. The prohibition applies regardless of whether his statements are true. It applies regardless of whether they threaten anyone. It applies regardless of whether they constitute harassment.

A truthful statement is forbidden. A lawful criticism is forbidden. Even a passing reference is forbidden.

That is not a narrowly tailored restriction on unlawful conduct. It is a blanket prohibition on commentary.

The First Amendment does not permit it.

**D. Speech does not lose constitutional protection merely because it is intended to pressure or injure its subject.**

Plaintiffs cannot justify the restraint merely by characterizing Mr. Hughes's commentary as malicious, coercive, or injurious.

The Supreme Court rejected that reasoning in *Keefe*. There, the Court held that an individual's "interest in being free from public criticism of his business practices" did not justify an injunction against speech. 402 U.S. at 419–20.

Mississippi law recognizes the same principle.

In *Edwards v. State*, 294 So. 3d 671 (Miss. Ct. App. 2020), the Mississippi Court of Appeals struck down a statute criminalizing online messages posted "for the purpose of causing injury to any person." The statute was substantially overbroad because it reached constitutionally protected expression whether true or untrue. *Id.* at 676.

The Court also identified the constitutional boundary. "True threats" of "unlawful violence" are not protected, and Mississippi's cyberstalking statute specifically addresses threats made through electronic communications. *Id.*

That distinction matters here.

The October 12 Order is not limited to true threats. It is not confined to genuine harassment. It prohibits speech because of whom it concerns. *See* Doc. Nos. 5-6.

Plaintiffs may have remedies for unlawful conduct. But those remedies do not include an order forbidding Mr. Hughes from speaking about them at all.

The First Amendment requires more than a generalized allegation of injury before a court may silence a speaker. And it requires far more than the October 12 Order provides.

## CONCLUSION

The October 12 Order cannot survive under the statute the Court invoked, the procedural rule that might otherwise authorize it, or the First Amendment.

Mississippi's Protection from Domestic Abuse Law does not apply because Mr. Hughes has no qualifying relationship with any Plaintiff. Rule 65 cannot save the Order because it was entered without the required notice certification, expiration date, or security. And the First Amendment independently prohibits its sweeping, ex parte restraint on speech.

For these reasons, Defendant Damarcus Hughes respectfully requests that the Court dissolve the October 12, 2026, Order Granting Ex Parte Relief, the Court's October 21, 2026 Order Extending Ex Parte Relief, deny Plaintiffs' motion for a preliminary injunction, and grant such further relief as the Court deems just and proper.

Respectfully submitted, this the 10th day of November, 2026.

**DAMARCUS HUGHES**

*/s/ Ray A. Young, Jr.*
Ray A. Young, Jr. (MSB No. 105851)

OF COUNSEL:

Ray A. Young, Jr. (MSB No. 105851)
The Young Law Firm LLC
100 S. Beach Blvd. 2nd Floor
Bay St. Louis, Mississippi 39520
(t) 228-215-2020
(f) 228-215-2072
(e) ryoung@younglawfirmms.com

*Counsel to Mr. Hughes*

**CERTIFICATE OF SERVICE**

I, Ray A. Young, Jr., certify that I have filed the foregoing Notice of Appearance on the Court's Electronic Filing System, which has caused service on all parties of record.

Respectfully submitted this the 10th day of November, 2026.

*/s/ Ray A. Young, Jr.*
Ray A. Young, Jr.